IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARIO MONTEZ CAMPBELL,<br><br>Petitioner,<br><br>vs.<br><br>CLARK DUCART, Warden, Pelican Bay State Prison,<br><br>Respondent. | No. 2:14-cv-01930-JKS<br><br>MEMORANDUM DECISION |

Mario Montez Campbell, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Washington is in the custody of

the California Department of Corrections and Rehabilitation and incarcerated at Pelican Bay

State Prison. Respondent has answered, and Campbell has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On direct appeal of his conviction, the California Court of Appeal laid out the following

facts underlying this case:

> Remy M. was an adult male who knew [Campbell]. Remy lived in a household
> with an adult female, Lynell D., with Lynell's two children (ages two and five), and with
> Lynell's 15–year–old sister, Brandi D. Remy and [Campbell] gambled with dice. The
> day before the home invasion, Remy won over $1,000 in a dice game, and this angered
> [Campbell].
> The next night, August 27, 2008, around midnight, Remy was on his balcony. He
> saw [Campbell] and another man outside his home, asked them if they wanted to smoke
> marijuana, and went into the house to get a lighter. [Campbell] and his accomplice
> entered Remy's house without invitation. [Campbell] had a gun. [Campbell] told his
> cohort to take Lynell to look for a gun, but when she told the man there was no gun, he
> threatened to hit her in the head with a bottle if she did not tell him where it was. The
> man then "rampag[ed]" through Lynell's room, taking about $2,000 and marijuana. The
> accomplice then took Lynell to Brandi's room to look for the gun, started "tearing all the
> boxes down," and woke Brandi up.

[Campbell] ordered Remy, Lynell and Brandi to remove all of their clothes. The crime partners then tied the victims up with wire. Lynell and Brandi were tied as follows: "We were both laying on our backs. And he starting tying up our feet first, then our arms together. Then he connected the two so both of our arms and feet were up in the air."

[Campbell] asked if Brandi was a virgin, asked his cohort "should we fuck?," and he and his cohort began kissing and rubbing Brandi and Lynell. Brandi began to cry. [Campbell] put his fingers in Brandi's anus three times and put his fingers in Lynell's vagina. [Campbell] also put his gun in Lynell's mouth, saying the gun "will wipe all of us out. Won't leave no one alive." When Lynell's two-year-old child cried, [Campbell] put the gun to the two-year-old's head and told her to quit screaming or he would shoot her.

[Campbell] also struck Remy on the head with the gun about eight times, "just like every five minutes." [Campbell] asked Remy, "Why you quitting the dice"—apparently expressing anger that the dice game had ended with Remy ahead.

[Campbell] said the gun was a "Mac 11" and later said "if I set off one round . . . this shit will blow up . . . this whole household." [Campbell] said that if the victims called the police, he would return and kill all of them. The crime partners took various items, including money, marijuana and the telephone. As the men left, they told the victims "not to get up for 15 minutes" or the men would come back and kill them.

Lynell managed to untie the others, and the family dressed, fled to a store to call 911, and signaled to a responding patrol car for help.

After the home invasion, [Campbell] called Lynell and threatened to kill the family because they had called the police. He also called Remy and said "I heard you called the police" and "If you want to do it like that, I'm going to [k]ill your whole family."

Then, regarding a subsequent incident, a probation officer testified that on October 29, 2008, he found [Campbell] in a particular bedroom where drugs and a gun were also found, and [Campbell] told the officer those items were his. Another probation officer testified that he found "a nine-millimeter M–11" inside the wall of a closet of that bedroom. He also found a white substance he thought was drugs and some marijuana in that bedroom.

Sergeant Lisa Bowman, a detective with the sexual assault bureau, testified that she listened to four telephone calls [Campbell] made to his girlfriend from jail. Two calls were made on November 6, 2008, one call was made on November 7, 2008, and one call was made on November 10, 2008. Recordings of the calls were played at trial. In one portion of a call, [Campbell] mentioned the police matching DNA with a T-shirt he left at Remy's house after the dice game, and in another portion of a call, [Campbell] said he would write a letter telling his girlfriend what to do, because he did not trust the phones. [Campbell] and his girlfriend later discussed having [Campbell's] brother Wayne "cash" someone "out" in exchange for dropping the charges, or at least changing "statements," which would be good for [Campbell], but that the "bitch" had said it was not about the money because "somebody had a gun to my baby's head."

The parties stipulated that [Campbell] had previously been convicted of a felony; that the white substance found by the probation officer was cocaine base; and that DNA

from the T-shirt at the house could have come from [Campbell], but could not have come from Remy, Lynell or Brandi.  The parties further stipulated that peace officers would testify to particular inconsistent statements made by Brandi and Lynell, including that Lynell said [Campbell's] accomplice put his fingers in her vagina.  Moreover, Remy was impeached with convictions for misdemeanor domestic violence and felony possession of marijuana for sale.

In closing argument, the defense emphasized the burden of proof, inconsistencies or implausibilities in the testimony, and argued the victims were untruthful.  The defense conceded guilt on the gun and drug charges stemming from the search.

The jury found [Campbell] guilty of residential burglary ([Cal.] Pen. Code, § 459), robbery (three counts pertaining to Remy, Lynell & Brandi) (*id.*, § 211), assault with a firearm (three counts as to Remy, Lynell & the two-year-old) (*id.*, § 245, subd. (a)(2)), forcible sexual penetration (three counts as to Lynell, two counts as to Brandi) (*id.*, § 289, subd. (a)(1)), sexual battery upon a restrained person (Lynell) (*id.*, § 243.4, subd. (a)), false imprisonment by violence or menace (three counts as to Remy, Lynell & Brandi) (*id.*, § 236), attempting to dissuade a witness (Remy) (*id.*, § 136.1, subd. (b)(2)), possession by a felon of a firearm (two counts) (*id.*, § 12021, subd. (a)(1)), and possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)).  The jury also found defendant personally used a firearm (Pen. Code, §§ 12022.5, subd. (a), 12022.53, subd. (b)), and found true certain One Strike allegations (*id.*, § 667.61, subds. (a), (e)(2), (e)(4) & (e)(5)) . . . .

[Campbell] exercised his right of self-representation at sentencing.  The trial court sentenced [Campbell] to prison and characterized the sentence as a determinate term of 101 years 4 months, followed by an indeterminate term of 175 years to life.  A two-year sentence on a trailing probation violation matter (case No. 06F10787) was imposed concurrently.

*People v. Campbell*, No. C063219, 2010 WL 5141842, at *1-3 (Cal. Ct. App. Dec. 17, 2010).

Through counsel, Campbell appealed his conviction, arguing that: 1) the evidence was insufficient to sustain his conviction on three counts of sexual penetration committed against Lynell; 2) the trial court erred in the unanimity instruction it gave pertaining to the two sexual penetration counts involving Brandi and the three sexual penetration counts involving Lynell; and 3) some of the firearm enhancements were wrongly attached to some offenses.  The prosecution conceded that Campbell was correct with respect to the firearm enhancements claim, but other opposed the appeal.  In a reasoned, unpublished opinion issued on December 17, 2010, the Court of Appeal modified the abstract of judgment to correct the firearm enhancements but

unanimously affirmed the judgment in all other respects. *Campbell*, 2010 WL 5141842, at *8. Campbell petitioned for review in the California Supreme Court, raising the two claims he unsuccessfully raised to the Court of Appeal. The petition for review was denied without comment on March 2, 2011.

Campbell then filed in the California Superior Court a *pro se* petition for habeas relief. In that petition, he argued that: 1) the prosecutor committed misconduct in summation by "indirectly mention[ing]" Campbell's failure to testify, improperly vouching for witnesses' credibility, and offering personal opinions; and 2) he discovered new evidence that established that the DNA evidence used to convict him was false. On February 18, 2014, the superior court issued a reasoned, unpublished opinion denying Campbell's claims on the merits.

Again proceeding *pro se*, Campbell filed an additional habeas petition in the Court of Appeal. In that petition, he again raised the prosecutorial misconduct and newly-discovered evidence claims previously raised to the Superior Court. He raised additional claims alleging that trial counsel was ineffective for a variety of reasons, the evidence was insufficient to sustain a number of his convictions, and the jury was improperly influenced during his trial. The Court of Appeal summarily denied the petition on March 27, 2014. Campbell raised the same claims in a *pro se* habeas petition to the California Supreme Court, which was likewise denied without comment on July 16, 2014.

Campbell then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on August 18, 2014. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Campbell argues that: 1) the prosecutor committed misconduct during summation by indirectly mentioning Campbell's failure to testify, vouching for witness credibility, and offering his personal opinions; 2) a revised DNA report constitutes newly-discovered evidence establishing that the DNA evidence used to convict Campbell was false; 3) counsel was ineffective for stipulating to the admission of police officer statements rather than calling the officers to testify; 4) counsel was ineffective for failing to investigate potential witnesses; 5) counsel was ineffective for failing to object to erroneous jury instructions; 6) counsel was ineffective for failing to request the removal of jurors who had been subjected to outside influences during trial; 7) counsel was ineffective with respect to his cross-examination of witnesses; 8) appellate counsel was ineffective for failing to raise Campbell's prosecutorial misconduct, judicial bias, and juror bias claims; 9) he was denied his right to a fair trial when three jurors were subject to outside influences during trial; 10) the trial judge was biased against him and made improper statements during cross-examination and allowed the prosecutor to make improper statements as well; 11) he was denied his right to counsel of choice; and 12) the trial court erred and improperly shifted the burden to the defense in its jury unanimity instruction.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Id.* at 412.  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.   <u>Prosecutorial Misconduct (Grounds 1 and 2)</u>

Campbell first argues that the prosecutor committed misconduct at several times during closing and rebuttal arguments and by relying on false evidence. To successfully raise a claim cognizable on habeas review based on a prosecutor's comments at trial, a petitioner must demonstrate that the prosecutor's comments "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Under this standard, only egregious prosecutorial misconduct can give rise to a constitutional claim. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). A prosecutor's comments in summation constitute grounds for reversal only when the remarks caused actual prejudice. *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004) (applying harmless error test to claim of prosecutorial misconduct in summation).

1.     *Improper statements*

Campbell alleges that the prosecutor made statements that improperly appealed to the jury's emotions, vouched for a witness's credibility, and commented on Campbell's failure to testify.  As an initial matter, Respondent urges that this improper-comment claim should be dismissed as procedurally barred because the state superior court, in the last reasoned decision, denied the claims with a citation to *In re Dixon*, 264 P.2d 513, 514 (Cal. 1953), which indicates that the state court found those claims to be barred because they could have been, but were not, raised on direct appeal.  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  The Ninth Circuit has not explicitly found that a *Dixon* default is an independent and adequate state law ground, but it has indicated that it is likely to do so with respect to the time period at issue here.  *See Bennett v. Mueller*, 322 F.3d 573, 580-86 (9th Cir. 2003) (suggesting in dicta that *Dixon* rule would constitute an independent and adequate state-law ground when applied after the California Supreme Court's 1998 decision in *In re Robbins*, 959 P.2d 311 (Cal. 1998)); *see also Flores v. Roe*, 228 F. App'x 690, 691 (9th Cir. 2007)[1] (finding claim procedurally barred based on *Dixon* bar); *cf. Park v. California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000) (holding that *Dixon* bar was not independent state law ground prior to *Robbins*). Some courts in this district have accordingly concluded that habeas review is foreclosed when the petitioner has failed to place the adequacy of the *Dixon* rule at issue and has not shown cause and prejudice or that a miscarriage of justice would result if the claim were not heard.  *See, e.g.,*

---

[1]        Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

*Stribling v. Grounds*, No. 12-cv-3084, 2013 WL 5817668, at *4-5 (E.D. Cal. Oct. 29, 2013); *Cantrell v. Evans*, No. 07-cv-1440, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 24, 2010).

In any event, Campbell's arguments are without merit. With respect to his claim that the prosecutor impermissibly stated to the jury that Campbell had been "undercharged" in light of the offenses he had actually committed, the victims testified at trial that Campbell had committed more acts of sexual penetration than which he had been charged. Given that the prosecutor was thus commenting on the evidence presented at trial, Campbell cannot show that the "undercharged" comment infected his trial with unfairness. Likewise, the prosecutor's comment that his "heart was breaking" did not deprive him of a fair trial. *See Darden*, 477 U.S. at 183 (holding that the prosecutor's remarks during closing, which included calling the defendant an "animal," labeling the crime as "the work of an animal," and arguing that the defendant should not be let out of his cell without "a leash," did not render the defendant's trial fundamentally unfair). Moreover, although Campbell faults the prosecutor for arguing to the jury that the victims appeared to be scared when testifying, it is permissible for an attorney to infer from the evidence presented at trial that a witness is intimidated or fearful of testifying against a criminal defendant. *See United States v. Bracy*, 67 F.3d 1421, 1431 (9th Cir. 1995); *see also King v. Schriro*, 537 F.3d 1062, 1066, 1070-71 (9th Cir. 2008) (denying prosecutorial misconduct claim where the prosecutor remarked that a witness was "scared to death" about testifying where it was "plain from [the witness's] own testimony that she was scared of something").

Nor can Campbell show that the prosecutor improperly vouched for Brandi's credibility. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury

supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993); *see also Lawn v. United States*, 355 U.S. 339, 359 n.15 (1958); *Berger v. United States*, 295 U.S. 78, 86-88 (1935). Such misconduct poses two dangers: it may lead the jury to convict on the basis of evidence not presented, and it carries with it the imprimatur of the government. *United States v. Young*, 470 U.S. 1, 18-19 (1985). An independent review of the record reveals that the prosecutor did not use the prestige of the government, or suggest he was privy to information withheld from the jury that supported or discredited Brandi's testimony. Rather, the prosecutor attempted to persuade the jury that Brandi was telling the truth. Ultimately, the prosecutor's arguments were permissible comments based on the state of the evidence presented at trial. *See Duckett v. Godinez*, 67 F.3d 734, 742 (9th Cir. 1995) (permissible for prosecutor to argue credibility of witness based on the evidence presented at trial).

Finally, Campbell cannot show that the prosecutor's comments created an unacceptable risk that the jury convicted him in part because he did not testify, in violation of Campbell's Fifth Amendment right against self-incrimination. The Fifth Amendment prohibits both the prosecutor and the trial court from commenting on a defendant's failure to testify. *Griffin v. California*, 380 U.S. 609 (1965). However, a prosecutor may comment on the state of the evidence regarding a matter at trial so long as she refrains from commenting on the defendant's failure to testify. *Lockett v. Ohio*, 438 U.S. 586, 595 (1978) (prosecutor's comment that the government's evidence had been "unrefuted" and "uncontradicted" throughout the trial was not a direct comment on defendant's failure to testify); *Cook v. Schriro*, 538 F.3d 1000, 1020 (9th Cir. 2008) (holding that prosecutor's comment that defendant had never told his cellmate where he was when the offense was committed as challenging credibility of the cellmate's testimony

10

concerning defendant's alibi defense, rather than directly commenting on defendant's failure to testify).  Here, as the superior court reasonably concluded when rejecting this argument on habeas review, "[w]hen read in context, it appears that the prosecutor was referring to the first time the defense presented an alternate theory about who committed the crime, not about petitioner's decision not to testify."  Additionally, any alleged *Griffin* error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  A *Griffin* error is harmful "where such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis for the conviction, and where there is evidence that could have supported acquittal."  *Hovey v. Ayers*, 458 F.3d 892, 912 (9th Cir. 2006).  Here, the challenged comments were brief, the prosecutor did not stress, or even say, that the jury could infer guilt from Campbell's failure to testify, and the evidence against him was overwhelming.[2]  *See id.* (any *Griffin* error harmless where challenged comments were isolated comments and minimal in comparison with the weight of the evidence).  Furthermore, the court also instructed the jury that the statements of counsel were not evidence, that Campbell had a constitutional right not to testify, and that the jury could not consider his failure to testify "for any reason at all" or discuss it in deliberations.  *Id*. at 913 (*Griffin* error harmless where, among other things, trial court instructed jury that statements of counsel were

---

[2]     Other courts have admonished that harmless error review should not be confused with the sufficiency of the evidence inquiry required under *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  *See, e.g.*, *Jensen v. Clements*, 800 F.3d 892, 902 (7th Cir. Sept. 8, 2015) ("Time and time again, the Supreme Court has emphasized that a harmless-error inquiry is not the same as a review for whether there was sufficient evidence at trial to support a verdict.").  The Court's reliance on the overwhelming evidence against Campbell in finding any error harmless does not simply focus on the sufficiency of the other evidence, but rather properly "look[s] at the influence the improperly admitted [evidence] had on the verdict," in light of a "host of factors," including the overall strength of the prosecution's case.  *Id.* at 904 (citations omitted).

not evidence).  Accordingly, Campbell is not entitled to relief on any argument advanced in support of this prosecutorial misconduct claim.

2. *Reliance on false evidence*

Campbell also claims that the prosecutor relied on false evidence in securing his conviction.  The record indicates that a former DNA report included Campbell as a possible contributor to DNA found on a white t-shirt collected from the apartment complex where Remy and Campbell played the dice game, and the parties stipulated to that fact.  About three years after judgment was imposed against Campbell, a revised DNA report based on revisions to the *Interpretational Guidelines* and the *Statistical Guidelines within the Technical Procedures of the DNA Manual* was issued that expressly stated that no inclusions could be made as to possible contributors to the sample.

When a prosecutor obtains a conviction by the use of testimony or evidence that he knows or should know is false, the conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury.  *See United States v. Agurs*, 427 U.S. 97, 103 (1976); *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (same result obtains when State, although not soliciting false evidence, allows it to go uncorrected when it appears).  To prevail on a claim of prosecutorial misconduct for use of false witness testimony or evidence, a petitioner must show that (1) the testimony or evidence was actually false, (2) the prosecution knew or should have known that the testimony or evidence was false, and (3) the false testimony or evidence was material.  *Henry v. Ryan*, 720 F.3d 1073, 1084 (9th Cir. 2013); *see also Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (prosecutor's action in presenting false evidence to the jury and by failing to correct the record violated petitioner's rights).

Here, however, Campbell provides no reason to conclude that the prosecutor knew or should have known that, based on revisions to the *DNA Manual*, Campbell could not be included as a possible contributor to the DNA sample. Moreover, Campbell fails to show that the evidence was material because the revised report does not conclusively exonerate him or preclude any possibility of his guilt. Similarly, the prosecutor used the DNA evidence and stipulation to argue that Campbell had been at the apartment complex the day before the attack; it was not used to establish that he broke into the apartment the next day. Rather, the victims testified that Campbell entered their home, tied them up, sexually assaulted and beat them, and stole their property, and Campbell made several incriminating statements to his girlfriend during jail phone calls. It is thus not likely that the proceedings would have been different if the jury had been informed that Campbell could not be definitively included, but not excluded, as a contributor to the DNA found on the shirt. Campbell is therefore not entitled to relief on this claim.

B.     Freestanding Ineffective Assistance of Counsel Claims (Grounds 3, 4, 7, 8)

Campbell next raises a number of ineffective assistance of counsel claims. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established

prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Campbell must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

      1.    *Trial counsel*

Campbell first faults trial counsel for stipulating to testimony that two officers would have given if they had been called as witnesses rather than calling those officers to testify. The

stipulations, which were read into evidence during the defense case, stated that the officers

interviewed Brandi and Lynnel and took several statements from those victims that were

inconsistent with their trial testimony. The Court notes, however, that a trial counsel's decision

to enter into a stipulation involves a matter of trial strategy, and disagreement about trial tactics

cannot from the basis for a claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at

688; *People of Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984). Moreover,

Campbell fails to demonstrate that counsel was ineffective for so stipulating because he does not

provide evidence suggesting that the officers' live testimony would have benefitted his case

more than the stipulated evidence. For the same reason, he fails to show that he suffered

prejudice as a result of the stipulations.[3]

Campbell next alleges that trial counsel was deficient for failing to find and interview

potential witnesses and for failing to interview the prosecution's witnesses. As he did in his

habeas petitions to the state courts, however, Campbell offers only conclusory assertions,

unsupported by any competent evidence such as a declaration from trial counsel, in support of

his claim that trial counsel failed to adequately investigate his defense. Likewise, Campbell does

not name any witnesses he believes should have been called or point to any specific evidence

that he feels was overlooked. The record likewise does not indicate that trial counsel's

---

[3]        With respect to Campbell's claim that his trial counsel's stipulations constituted
ineffective assistance of counsel, the Ninth Circuit has confirmed that *Strickland*, which requires
showing that counsel's deficient performance prejudiced defense, rather than *United States v.
Cronic*, 466 U.S. 648, 659-60 (1984), which allows for presumption of prejudice, governs a
federal court's assessment of a habeas petitioner's ineffective assistance claim arising from
defense counsel's stipulations where, as here, defense counsel's performance did not reveal "a
complete failure to test the State's case." *See Allerdice v. Ryan*, 395 F. App'x 449, 451 (9th Cir.
2010).

investigation was inadequate in any way. Because Campbell has failed to meet his burden of proof on habeas, he is not entitled to relief, and his ineffective assistance of counsel claim is rejected on that basis. *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (finding that mere speculation that witness might have given helpful information if interviewed insufficient to establish ineffective assistance of counsel); *Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (rejecting ineffective-assistance-of-counsel claim based on counsel's failure to interview or call alibi witness because petitioner provided "no evidence that this witness would have provided helpful testimony for the defense"); *see also Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) ("self-serving statement" insufficient to raise claim for relief).

Similarly, Campbell asserts that counsel should have requested an instruction on a lesser-included offense to burglary, but he does not identify the lesser-included offense for which trial counsel should have requested an instruction or point to evidence adduced at trial that would have warranted such instruction. Because he fails to show that trial counsel should have requested a lesser-included instruction, Campbell fails to show that trial counsel was deficient in that regard.

Finally, Campbell contends that counsel performed an inadequate cross-examination of Sheriff's Deputy Sergeant Bowman. As Campbell notes, trial counsel asked Bowman during the preliminary hearing about statements the victims had made to other officers by asking her to read the victims' statements from reports but did not ask those same questions at trial. According to Campbell, counsel should have asked those questions at trial to show that the victim's pre-trial statements were inconsistent with their trial testimony. However, because Bowman did not hear the victim's pre-trial statements, her testimony as to them would have constituted inadmissible

hearsay. Instead, counsel ensured that the pre-trial statements would be admitted by introducing stipulations as what the victims told officers after the incident. Campbell thus fails to show that counsel's actions were ineffective.

2. Appellate counsel

Campbell further argues that his appellate counsel was ineffective for failing to raise on direct appeal the claims he has raised in this Petition. But, as discussed throughout this opinion, this Court has thoroughly considered and rejected these claims. Appellate counsel cannot be faulted for failing to raise meritless claims. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (appellate counsel does not have an obligation to raise every nonfrivolous argument); *Turner*, 281 F.3d at 872 ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard."). Accordingly, Campbell is not entitled to relief on any of his ineffective assistance of counsel claims.

C.   Jury Tampering Claim/Ineffective Assistance of Counsel (Grounds 6, 9)

Campbell next claims that his rights to due process and a fair trial were violated by an improper influence on the jury. The Sixth Amendment right to a jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). Due process requires that the defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *Bayramoglu v. Estelle*, 806 F.2d 880, 887 (9th Cir. 1986) ("Jurors have a duty to consider only the evidence which is presented to them in open court."). A defendant is denied the right to an impartial jury if even one juror is biased or prejudiced. *Fields v. Woodford*, 309

F.3d 1095, 1103 (9th Cir.), amended, 315 F.3d 1062 (9th Cir. 2002); *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998) (en banc).

The introduction of prejudicial extraneous influences into the jury room constitutes misconduct which may result in the reversal of a conviction. *Parker v. Gladden*, 385 U.S. 363, 364-65 (1966). "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *Turner v. Louisiana,* 379 U.S. 466, 472-73 (1965); *see also Estrada v. Scribner,* 512 F.3d 1227, 1238 (9th Cir. 2008) ("The Sixth Amendment guarantee of a trial by jury requires the jury verdict to be based on the evidence produced at trial." (citing *Jeffries v. Wood,* 114 F.3d 1484, 1490 (9th Cir. 1997) (en banc), *overruled on other grounds by Gonzalez v. Arizona,* 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc))). Thus, the Ninth Circuit has "consistently recognized that the Sixth Amendment prohibits jurors from introducing matters into the deliberations not present during the trial." *Fields v. Brown*, 503 F.3d 755, 793 (9th Cir. 2007); *see Gibson v. Clanon*, 633 F.2d 851, 854 (9th Cir. 1980) (explaining that a jury's consideration of extrinsic material is a constitutional violation). There is a potential for prejudice when a juror "interjects into deliberations 'objective extrinsic facts' regarding the accused because that juror becomes an unsworn witness who is not subject to either confrontation or cross-examination." *Mancuso v. Olivarez*, 292 F.3d 939, 950 (9th Cir. 2002) (citation omitted).

No bright line exists for determining whether a petitioner has suffered prejudice from juror misconduct; therefore, reviewing courts "place great weight on the nature of the extraneous

information that has been introduced into deliberations." *Id.* (citation omitted). "The inquiry into a jury's consideration of extrinsic evidence does not end at whether misconduct occurred; upon a finding of misconduct, a *rebuttable* presumption of prejudice applies." *Tong Xiong v. Felker*, 681 F.3d 1067, 1077 (9th Cir. 2012). In the case of an allegation of juror misconduct, "a post-trial hearing is adequate to discover whether [the defendant] was prejudiced" by that alleged misconduct. *Rushen v. Spain,* 464 U.S. 114, 119 at n.3 (1983); *see also Smith*, 455 U.S. at 218 (upholding post-trial hearing as an adequate remedy to determine prejudicial effect of juror misconduct). However, such a hearing is not constitutionally required unless a sufficiently strong showing of misconduct has been made. *See generally Tanner v. United States,* 483 U.S. 107, 126 (1987). This standard recognizes that a criminal defendant's Sixth Amendment interests are already adequately protected by several aspects of the trial process, including voir dire, observation during trial by the court, counsel, and courtroom personnel, and observation by fellow jurors. *Id.* at 127.

Thus, clearly established Supreme Court precedent does "not stand for the proposition that *any time* evidence of juror bias comes to light, due process requires the trial court to question the jurors alleged to have bias." *Sims v. Rowland,* 414 F.3d 1148, 1155 (9th Cir. 2005). Rather, Supreme Court precedent "provide[s] a 'flexible rule.'" *Id.* The Ninth Circuit held that this "elasticity" is reflected in its own cases interpreting the Due Process Clause, which uniformly hold that:

> a federal court is not required to hold a hearing in order to comply with due process, but should "consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source" when determining whether a hearing is required.

*Id.* (citation omitted).

Due process thus "forbids a trial judge from remaining idle in the face of evidence" indicating probable juror bias or misconduct, but there is no bright-line rule requiring a full-fledged hearing in every case. *Id*. at 1156. Here, the record reflects that, during trial, the court noted on the record that a juror told the bailiff that a couple of the jurors were in the women's restroom when they heard a person crying in the stall say "he touched my sister." The court called both of the jurors into the courtroom individually. Both of the jurors stated that they heard the comment but did not recognize the voice.[4] The court also questioned an alternate juror who had been in the bathroom, but she stated that she only heard crying and did not hear the comment. The court admonished each of the jurors to not consider the incident for any purpose and to not relay what had happened to the other jurors.

The record therefore supports the state court's conclusion that the bathroom incident did not cause the relevant jurors to become impartial. The episode was brief and the jurors did not indicate that they were unable to disregard it. There is no constitutional requirement, and no decided case of the United States Supreme Court, requiring a trial court to conduct any investigation into juror misconduct or tampering unless sufficient evidence has been demonstrated that actual juror misconduct may exist. In this case, misconduct was not established before the trial court, so the court's brief inquiry to the affected jurors was sufficient to dispel any concern of jury bias. Accordingly, Campbell has not shown that he was denied of "a jury capable and willing to decide the case solely on the evidence before it . . . ." *Phillips*, 455 U.S. at 217. Thus, habeas relief is not warranted as to his jury tampering claim. And

---

[4]     While neither juror associated the person in the restroom stall with a witness at trial, extrinsic evidence from a court victim counselor (given outside the presence of the jurors) indicated that the person in the restroom was Lynell.

because Campbell fails to show that he was deprived of an impartial jury, he likewise fails to show that counsel was deficient for not requesting the removal of the affected jurors on that basis. *See Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a *Strickland* ineffective assistance of counsel claim). Campbell is therefore not entitled to relief on either of these grounds.

D.      Judicial Bias/Participation (Ground 10)

Campbell additionally alleges that the trial judge committed judicial misconduct when he interjected himself during defense counsel's questioning of a victim. According to Campbell, the judge's statements informed the jury that the victim's testimony was what "really happened." However, a review of the record reflects that the judge's statements were not improper because they were impartial and did not comment upon the witness's credibility. Rather, the statements were intended to clarify defense counsel's questions: the court clarified that defense counsel was asking whether the witness recalled making her prior statement to law enforcement, not whether her prior statement was accurate as to what happened.

Campbell similarly contends that the trial judge was biased against him. In support, he notes that the trial court failed to sustain several objections defense counsel made during the prosecutor's closing arguments. Campbell's conclusory statements are insufficient, however, to demonstrate that the trial judge was personally biased against him, engaged in misconduct, or otherwise deprived Campbell of a fundamentally fair proceeding. The Ninth Circuit has repeatedly recognized that adverse rulings alone are insufficient to demonstrate judicial bias. *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 1995); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 712-13 (9th Cir. 1993); *Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1980).

Moreover, a review of the record as a whole does not reflect unfair prejudice or "a predisposition . . . so extreme as to display clear inability to render fair judgment." *Liteky v. United States*, 510 U.S. 540, 551 (1994). Campbell is therefore not entitled to relief on this ground.

E.     Denial of Counsel of Choice (Ground 11)

During trial, Campbell filed a *Marsden*[5] motion to substitute counsel. The trial court held a hearing and denied the motion.[6] Campbell contends that the denial violated his right to counsel.

The Sixth Amendment right to counsel guarantees to an accused the concomitant rights to conflict-free representation and the effective assistance of counsel. *See Wheat v. United States*, 486 U.S. 153, 156 (1988); *Strickland*, 466 U.S. at 686. The denial of a *Marsden* motion may implicate the Sixth Amendment right to counsel. *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc); *Bland v. Cal. Dep't of Corrs.*, 20 F.3d 1469, 1475-76 (9th Cir. 1994), overruled on other grounds in *Schell*, 218 F.3d at 1025-26; *Hudson v. Rushen*, 686 F.2d 826, 828-29 (9th Cir. 1982).

The Sixth Amendment right to counsel also includes a qualified right to retain counsel of choice. *See Schell*, 218 F.3d at 1025 (citations omitted). However, an indigent defendant, while entitled to appointed counsel, is not constitutionally entitled to appointed counsel of choice. *Hendricks v. Zenon*, 993 F.2d 664, 671 (9th Cir. 1993). When a criminal defendant requests a

---

[5]     *People v. Marsden*, 465 P.2d 44 (Cal. 1970) (holding it was error for the trial court to deny a defendant's motion to relieve his court-appointed attorney without holding a hearing to allow the defendant to explain its grounds).

[6]     The transcript of the *Marsden* hearing was not included in the record on direct appeal and is not included in the record before this Court on habeas review.

substitution of counsel, the trial court is constitutionally required to inquire about the defendant's reasons for wanting a new attorney. *Schell*, 218 F.3d at 1025 ("[I]t is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for such a motion, and that the matter be resolved on the merits before the case goes forward."). The Supreme Court has, however, "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). The ultimate question before this Court then is not whether the state trial court abused its discretion in denying Campbell's motion but whether its denial "actually violated [Campbell's] constitutional rights in that the conflict between [Campbell] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." *Schell*, 218 F.3d at 1026. The Ninth Circuit has explained:

> The test for determining whether the trial judge should have granted a substitution motion is the same as the test for determining whether an irreconcilable conflict existed. The court must consider: (1) the extent of the conflict; (2) whether the trial judge made an appropriate inquiry into the extent of the conflict; and (3) the timeliness of the motion to substitute counsel.

*Daniels v. Woodford*, 428 F.3d 1181, 1197-98 (9th Cir. 2005) (citations omitted).

Here, the record reflects that Campbell was given an opportunity to address his concerns with counsel to the court. Although the transcript of that hearing is not before this Court, there is no indication that Campbell was in any way prevented from sharing his concerns with the court, and Campbell fails to demonstrate that he had a valid basis for demanding new counsel. *See United States v. Prime*, 431 F.3d 1147, 1155 (9th Cir. 2005) (finding inquiry adequate where defendant "was given the opportunity to express whatever concerns he had, and the court

inquired as to [defense counsel's] commitment to the case and his perspective on the degree of communication"). With respect to the nature and extent of the alleged conflict with counsel, the substance of Campbell's complaints appear to amount to a disagreement over defense trial tactics. However, it is well-established that tactical matters are within the purview of trial counsel's discretion and disagreements over them do not necessitate substitution of counsel. *United States v. McKenna*, 327 F.3d 830, 844 (9th Cir. 2003) (holding that dispute over trial tactics "is not a sufficient conflict to warrant substitution of counsel"). Because Campbell fails to demonstrate that the facts enumerated by the Ninth Circuit in *Daniels* weighed in favor of granting his substitution motion, Campbell cannot show that he was denied his Sixth Amendment right to counsel and is therefore not entitled to relief on this claim.

F.     Erroneous Jury Unanimity Instruction/Ineffective Assistance of Counsel (Grounds 9, 12)

Finally, Campbell argues that the unanimity instruction, as given to the jury, was erroneous. The Court of Appeal considered and rejected this claim on direct appeal as follows:

> [Campbell] also challenges the unanimity instruction given by the trial court pertaining to the two sexual penetration counts involving Brandi and the three sexual penetration counts involving Lynell. His argument lacks merit.
>
> The verdict forms specified which acts supported which counts. Thus, as to counts six, seven and eight, the verdicts specified acts committed against Lynell as "first penetration," "subsequent penetration," and "last penetration." As to counts eleven and twelve, the verdicts specified acts committed against Brandi as "first penetration" and "last penetration." The prosecutor made parallel elections in closing argument, as follows: "For example, when [counts] six, seven and eight go with one victim, your verdict form will say first time, subsequent time and last time. [¶] For Counts 11 and 12, first time and last time."
>
> The trial court gave CALCRIM No. 3515, instructing the jury that each count charged a separate crime and "You must consider each count separately and return a separate verdict for each one."
>
> The trial court also gave CALCRIM No. 3501, instructing the jury that there was evidence of more than one act for some offenses, including the sexual penetration offenses, and the jury "must not find the defendant guilty unless" either "You all agree that the People have proved that the defendant committed at least one of these acts and

you all agree on which act he committed for each offense[,]" or "You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged."

[Campbell's] challenge pertains to the second alternative in CALCRIM No. 3501. He objects to what he calls the "all-or-nothing" instruction, because he contends that, far from ensuring unanimity, it invites non-unanimity. He argues as follows:

> "Lynell testified that more than three or four acts occurred directly committed by appellant, and an unspecified number of acts were committed on her by the accomplice. In such a case, some of the jurors could have concluded that appellant committed four or more acts; some could have concluded that he committed three or more acts; and indeed, some could have concluded that he committed none on her, but was an aider and abettor in the more than three or more than four committed by the accomplice. [Citations.] In these circumstances, the 'all-or-nothing' formulation does not result in a unanimous finding of the same act for each count. Similarly in the case of Brandi, who also could not remember the number of counts, some jurors may have found the commission of only two acts, while others may have found more than two. Under these circumstances, unanimity is not assured."

Assuming the facts support the number of possibilities posited by [Campbell's] contention, we see no defect in the instruction as applied to this case. Both alternatives in the unanimity instruction required that the jurors "all agree" in their findings. If the jurors used the second alternative, they were told they must find as follows: "You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged." If the jurors found [Campbell] "committed *all* the acts alleged to have occurred" (emphasis added), the scenarios posited by [Campbell's] argument, quoted above, would not occur, because his scenarios contemplate that some jurors might find less than all of the acts described by the evidence occurred. (*See People v. Baughman* (2008) 166 Cal. App. 4th 1316, 1320–1321.)

We must presume the jury would correlate the separate-verdict instruction with the unanimity instruction and would follow both instructions as given. (*See People v. Sanchez* (2001) 26 Cal.4th 834, 852 [jurors are presumed to understand, correlate and follow the instructions they are given]; *see also People v. Milosavljevic* (2010) 183 Cal.App.4th 640, 648–650 [rejecting a similar challenge to CALCRIM No. 3501].)

As for the offenses against Brandi, [Campbell] posits that some jurors might find "only two acts" occurred, but others might find "more than two." Even if that happened, that would mean all of the jurors agreed on at least two acts, and because only two counts were charged naming Brandi as a victim, that would not pose a unanimity problem. As for the offenses against Lynell, [Campbell] posits that some jurors might have predicated liability on three acts by [Campbell], and others might have predicated liability on three acts by the accomplice. But in that case, the jury would not have obeyed the unanimity instruction. The instruction required all jurors to "agree that the People have proved that

the defendant committed all the acts alleged to have occurred during this time period[.]"
Thus, [Campbell's] scenarios would arise only if the jury disobeyed the instructions,
which we must presume did not happen.

Moreover, even if there had been an error regarding the unanimity instruction, the
error was harmless. (*See People v. Thompson* (1995) 36 Cal. App. 4th 843, 853.) The
defense position at trial was that the victims were lying. But the record indicates the jury
resolved this credibility dispute against [Campbell]. [Campbell] has not established that
the jury would have made a more favorable finding if they had received a different
instruction. (*Ibid.*)

*Campbell*, 2010 WL 5141842, at *5-6.

As an initial matter, the Constitution does not require unanimous agreement on the theory

underlying a conviction. *See Richardson v. United States*, 526 U.S. 813, 817 (1999) (federal

jury need not unanimously decide which set of facts make up a particular element of a crime);

*Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (plurality holding that conviction under different

theories does not violate due process); *see also McKoy v. N. Carolina*, 494 U.S. 433, 449 (1990)

(Blackmun, J., concurring) ("[D]ifferent jurors may be persuaded by different pieces of

evidence, even when they agree upon the bottom line. Plainly there is no general requirement

that the jury reach agreement on the preliminary factual issues which underlie the verdict."

(footnotes omitted)).

While a California trial court may be required under state law mandating that a jury

verdict in a criminal case be unanimous to *sua sponte* instruct the jury that it must unanimously

agree on the acts underlying the offense in order to convict, federal law is clear that, at least in a

non-capital case, there is no federal right to a unanimous jury verdict. *Compare People v.*

*Diedrich*, 643 P.2d 971, 980-81 (Cal. 1982) and *People v. Crawford*, 182 Cal. Rptr. 536, 538

(Cal. Ct. App. 1982) (unanimity instruction required where defendant was charged with

possession of one or more firearms by felon and jury could disagree as to particular firearm),

*with Schad*, 501 U.S. at 634 n.5 ("a state criminal defendant, at least in noncapital cases, has no federal right to a unanimous jury verdict") and *Apodaca v. Oregon*, 406 U.S. 404, 410-13 (1972) (no constitutional right to unanimous jury verdict in non-capital criminal cases).

Consequently, at least in non-capital criminal cases, courts within the Ninth Circuit have routinely dismissed habeas claims arguing that a California "unanimity" jury instruction was required. *See, e.g., Sullivan v. Borg*, 1 F.3d 926, 927-28 (9th Cir. 1993) (citing *Schad* to find that instruction allowing California jury to convict defendant of first degree murder without unanimity as to whether he had committed felony murder or premeditated murder did not violate petitioner's due process rights); *O'Rourke v. O'Connor*, No. CIV S-09-1837, 2010 WL 4880667, at *6 (E.D. Cal. Nov. 23, 2010).

Because there is no federal law requiring a jury verdict to be unanimous, as with any instructional error, Campbell is entitled to habeas relief only if he can show that the trial court's failure to give a unanimity instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle,* 502 U.S. at 72 (quoting *Cupp v. Naughten,* 414 U.S. 141, 147 (1973)). Where the alleged error is failure to give an instruction, the burden on the petitioner is "especially heavy." *Henderson v. Kibbe,* 431 U.S. 145, 155 (1977).

Campbell cannot satisfy this heavy burden because the record supports the Court of Appeal's conclusion that the jury instructions as a whole removed any possibility that the jurors failed to reach unanimity in its verdict. This Court, like the California courts, must assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis v. Franklin*,

471 U.S. 307, 323-24 & n.9 (1985) (discussing the subject in depth). For the reasons thoroughly and persuasively explained by the Court of Appeal, Campbell fails to show that he was deprived of a fair trial in this respect, and is not entitled to relief on this claim. And because Campbell fails to show that the instructions as given were erroneous, he likewise fails to show that counsel was deficient for failing to object to them. *See Lockhart*, 506 U.S. at 374.

V. CONCLUSION AND ORDER

Campbell is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: March 7, 2017.

____/s/James K. Singleton, Jr._____<br>
JAMES K. SINGLETON, JR.<br>
Senior United States District Judge